**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IMS HEALTH INFORMATION SOLUTIONS USA, LLC (f.k.a. Cegedim Strategic Data USA, LLC)<br><br>Plaintiff,<br><br>v.<br><br>BRUNO LEMPERNESSE.,<br><br>Defendant. | Civil Action No.: 15-7561(JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

Currently pending before the Court is Plaintiff IMS Health Information Solutions USA, LLC ("Plaintiff" or "IMS USA")'s motion for a preliminary injunction, filed against Defendant Bruno Lempernesse ("Defendant" or "Mr. Lempernesse") on October 19, 2015. (ECF No. 1-5). Specifically, Plaintiff, who alleges claims of misappropriation of trade secrets under the New Jersey Trade Secrets Act (ECF No. 1, "Compl."), seeks an order preliminarily enjoining Defendant from competing with IMS USA pending the outcome of this action.

Defendant responded to Plaintiff's Motion on November 25, 2015 (ECF No. 19, "Def's. Opp. Br."), and Plaintiff filed a supplemental memorandum of law in support of its preliminary injunction motion that same day (ECF No. 20, "Pl's. Supp. Br."). The undersigned held a hearing on Plaintiff's motion for a preliminary injunction on December 2, 2015, (see ECF No. 28, Transcript, "Tr."), and the Court reserved judgment on that motion. After considering the arguments made by the parties in their multiple filings, as well as the arguments raised during the

December 2, 2015 hearing, and for the reasons stated below, this Court denies Plaintiff's motion for a preliminary injunction.

## **BACKGROUND**

### A. **Procedural Background**

On October 19, 2015, Plaintiff IMS Health Information Solutions USA, LLC ("Plaintiff" or "IMS USA") filed a Verified Complaint alleging that Defendant Bruno Lempernesse, Plaintiff's former Chief Operating Officer, has misappropriated IMS USA's trade secrets in violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq*.  (ECF No. 1, Compl.).  Accompanying the Complaint was Plaintiff's Motion for a Temporary Restraining Order ("TRO"), Preliminary Injunction and Expedited Discovery. (ECF No. 1-4).  On October 20, 2015, this Court granted Plaintiff's requests for a TRO and an Expedited Discovery schedule.  (ECF No. 5).  Among other directives, the Court temporarily enjoined Defendant from competing with Plaintiff's business and required Defendant to return all tangible trade secrets and other proprietary information in his possession to Plaintiff.  (Id.).  On October 28, 2015, the parties executed a Consent Order, which this Court signed on October 29, 2015.  (ECF Nos. 10, 11).  To date, that Consent Order remains binding on the parties.

Defendant responded to Plaintiff's Motion on November 25, 2015 (ECF No. 19, "Def's. Opp. Br."), and Plaintiff filed a supplemental memorandum of law in support of its motion that same day (ECF No. 20, "Pl's. Supp. Br.").  The undersigned held a hearing on Plaintiff's motion for a preliminary injunction on December 2, 2015, but reserved judgment on Plaintiff's motion. (See ECF No. 28).

After considering the parties' arguments, the Court determined that further briefing was necessary with regards to the issue of whether IMS USA was bound by a Settlement Agreement

2

entered into between Defendant and IMS France, a non-party to the instant action.  Accordingly, on December 15, 2015, the Court ordered further briefing on this point.  (ECF No. 25).  In accordance with this Court's Order, Defendant filed his brief on December 23, 2015 (ECF No. 26, "Def's. Dec. 23, 2015 Br."), and Plaintiff filed its opposition on December 30, 2015 (ECF No. 27, "Pl's Dec. 30, 2015 Br.").  In short, Plaintiff's motion for a preliminary injunction has been thoroughly briefed, and is now ripe for this Court's adjudication.

## B. Factual Background

### i.     The Parties

Plaintiff IMS USA is a Delaware corporation with its principle of place of business in Jersey City, New Jersey.  (Compl. ¶ 6).  Plaintiff is a wholly-owned subsidiary of IMS Health Incorporated ("IMS Health"), which, "is a leading information, services, and technology company dedicated to improving healthcare platforms." (Id. ¶ 11).  According to the Complaint, "IMS Health and its subsidiaries, such as IMS [USA], help customers improve patient outcomes and operate more efficiently by providing clients with real-world evidence, advanced analytics, and proprietary software platforms."  (Id). Healthcare providers, payers, and medical device and consumer health manufacturers represent some of IMS Health's clients.  (Id.).

Defendant Bruno Lempernesse is a French citizen, currently residing in Bethesda, Maryland. (ECF No. 19-1, Declaration of Bruno Lempernesse, "Lempernesse Decl." ¶ 2).  In 1995, Defendant began his employment with BKL Consultants, a French company.  (Id. ¶ 3).  In 2006, Defendant's employment contract was transferred to a division of Cegedim, S.A., known as Cegedim Strategic Data, which operates out of France ("CSD France").  (Id. ¶ 3).  According to Mr. Lempernesse, "CSD collected medical data concerning patients and physicians from third parties, organized it and then analyzed it so that this information could be sold to and utilized by pharmaceutical

companies, research institutions, universities, and other customers." (Id.).  In 2011, CSD France expanded its business into the United States.  (Id. ¶ 4).  At that time, Mr. Lemprenesse was employed as the Chief Operating Officer of CSD's global operation, with a goal of assisting with the development of CSD USA's business.  (Id.).  To that end, Defendant entered into an expatriation agreement with CSD France, providing that although he would be paid directly by CSD USA, he would remain employed by CSD France.  (Id. ¶ 5).  Defendant and his family then relocated to the United States, where Mr. Lempernesse took on the responsibilities of Chief Operating Officer of CSD USA.  (Id. ¶ 4).

On April 1, 2015, IMS Health acquired certain assets of Cegedim S.A., the parent company of CSD France and CSD USA.  (Id. ¶ 11; Compl. ¶ 12).  As a result of the acquisition, CSD USA became IMS HIS ("IMS USA", for purposes of clarity in this Opinion), and CSD France became IMS France.  (Compl. ¶ 12).  Before this acquisition was consummated, Mr. Lempernesse and CDS France had entered into a Change of Control Agreement, which provided that Defendant would be entitled to certain benefits in the event that he was demoted as a result of the merger.  (Lempernesse Decl. ¶ 11).  After the acquisition, Defendant and IMS France disagreed over whether Mr. Lempernesse had suffered a demotion in his role, and Mr. Lempernesse sought to enforce the benefits he believed he was entitled to under the Change of Control Agreement.  (Id. ¶ 17; Compl. ¶ 28).

On September 11, 2015, following discussions between June 25 and September 1, 2015 between Defendant's French counsel, IMS France, and IMS France's counsel, IMS France and Mr. Lempernesse executed a Settlement Agreement regarding Defendant's termination with IMS France.  (Lempernesse Decl. ¶ 17; Compl. ¶ 32; ECF No. 1-1, Settlement Agreement).  Pursuant

to that Agreement, Mr. Lempernesse's employment contract with IMS France terminated effective November 30, 2015. (See Settlement Agreement).

### ii.    Plaintiff's Allegations

Following Plaintiff's termination with IMS France, IMS USA retained a forensic analyst to examine Mr. Lempernesse's work computer. (Compl. ¶ 33). According to Plaintiff and its expert, the forensic examination revealed "highly unusual activity on at least two key dates of [Mr. Lempernesse's] employment" that suggests that Defendant stole confidential proprietary information from IMS USA, as well as its parent company. (Id. ¶¶ 30-45).

The first of these "two key dates" is June 8, 2015, which is the date that Plaintiff alleges "Lempernesse rejected IMS France's re-employment offer." (Id. ¶ 34). Plaintiff alleges that on that date, Defendant "inserted two USB storage devices into his work laptop and accessed over 1,400 documents and files from those devices . . . . [a] vast majority [of which] contained highly confidential trade secrets belonging to [Plaintiff]." (Id.). Then, on September 1, 2015, on "the last day of [Defendant's] employment and mere hours before he was required to return all of the Company's documents, files, and devices," Mr. Lempernesse allegedly inserted another USB storage device and again accessed hundreds of documents containing Plaintiff's trade secrets. (Id. ¶ 38). Examples of information allegedly stolen include highly confidential pricing grids, information on key customers, copies of customer agreements, and "documents containing highly confidential and proprietary information concerning IMS USA's database analytics and composition methodologies that go to the core of the Company's business." (Id. ¶ 35).

Adding to Plaintiff's concern of Defendant's use or threatened misappropriation of trade secrets is the fact that, despite this Court's Order requiring Plaintiff to produce for forensic examination the USB storage devices identified in IMS USA's moving brief (ECF No. 11, ¶ 3),

Plaintiff has apparently failed to provide the USB drives. (Pl's. Dec. 30, 2015 Br. at 1). Moreover, Plaintiff has "testified to two different and conflicting theories to explain why he has not produced" one of those USB drives. (Pl's. Dec. 30, 2015 Br. at 1).

Plaintiff explains that Mr. Lempernesse's alleged theft of trade secrets is particularly troublesome in light of evidence that Defendant intends to start a new business in direct competition with IMS USA. (Id. ¶ 49). Plaintiff's allegations of Mr. Lempernesse's intent to compete are premised upon, among other things, IMS USA's knowledge, gained through its industry contacts, that Bruno Sarfati—Defendant's former boss (and former CEO of Cegedim's Strategic Data Business)—and Defendant are in the process of forming a new business by the name of "Real Data Consulting." (Id. ¶¶ 49-57). Indeed, at the December 2, 2015 hearing on this matter, Plaintiff confronted Defendant with evidence that he and Mr. Sarfati had recently created a company by the name of Real Life Data. (Tr. at 86-93). While Defendant initially represented to the Court that this is a "sleeping" company that "is doing nothing," (Tr. at 89:18-19), he later admitted that the company will be "about consulting services" in the pharmaceutical context. (Id. at 98:13-20).

Against this backdrop, Plaintiff now alleges a single count against Defendant for misappropriation of trade secrets in violation of the New Jersey Trade Secrets Act. (Compl. ¶¶ 58-67). Currently pending before the Court is IMS USA's motion to preliminarily enjoin Defendant "from competing against IMS USA in any capacity, and specifically with Bruno Sarfati, until (1) IMS USA has the opportunity to take further discovery; and (2) a final hearing for a permanent injunction takes place and a ruling is issued by this Court." (Def's. Dec. 30, 2015 Br. at 20).

## LEGAL STANDARD

The granting of a preliminary injunction "is an extraordinary remedy . . . which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). "The purpose of such an injunction is to protect the moving party from irreparable injury until the court can render a meaningful decision on the merits." *Caplan v. Fellheimer Eichen Braverman & Kaskly*, 68 F.3d 828, 839 (3d Cir. 1995). Before a court can enter a preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989).

While a district court is required to balance these four factors, the Third Circuit has held that a court may not enter a preliminary injunction where the plaintiff has not carried its burden of showing a likelihood of success on the merits. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury[ ] must necessarily result in the denial of a preliminary injunction."); *see also Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987).

## DISCUSSION

Plaintiff's basis for seeking a preliminary injunction is its allegation that Defendant has violated the New Jersey Trade Secrets Act, which "prohibits the actual or threatened misappropriation of a trade secret." N.J.S.A. § 56:15-3; *see also Diversified Industries, Inc. v. Vinyl Trends, Inc.*, No. 13-cv-6194, 2014 WL 1767471 (D.N.J. May 1, 2014) (Simandle, C.J.). Thus, the Court must decide whether Plaintiff is likely to succeed on his claims of misappropriation

under the Act.  In considering Plaintiff's likelihood of success on the merits, however, the Court must also consider the defenses offered by Mr. Lempernesse.

Among other defenses, Mr. Lempernesse contends that the Settlement Agreement entered into between Defendant and IMS France on September 11, 2015, either precludes this action to begin with, or, at the very least, that the Agreement's Forum Selection Clause requires that this action be brought in France, for the French courts to determine whether Plaintiff's lawsuit against Defendant is barred.

### i.      The Settlement Agreement

In Defendant's brief in opposition to Plaintiff's motion for a preliminary injunction (ECF No. 19), he stated that the instant lawsuit is barred because the September 11, 2015 Settlement Agreement "expressly provides that the parties release each other from all claims that have arisen or that may arise out of the performance and termination of Mr. Lempernesse's employment." (Def's. Opp. Br. at 35).  Defendant also argued that "[i]f nothing else, whether the Settlement Agreement, as interpreted under French law, precludes IMS USA's claims of misappropriation is a disputed issue that should preclude entry of preliminary injunctive relief, at least until such time as the French court decides this issue in the prior pending French action."[1]  (Id. at n.21).  Plaintiff foresaw this argument in its moving brief, and argued that the Settlement Agreement is not applicable to IMS USA because it did not sign the Agreement, and that even if IMS USA were

---

[1] According to Mr. Lempernesse, "[o]n October 7, 2015, [he] received a letter from the law firm of Morgan Lewis & Bockius, on behalf of IMS Health, the parent company of IMS France and IMS USA, accusing [him] of misappropriating IMS Health's confidential information, demanding the return of its information and threatening legal action." (Lempernesse Decl. ¶ 32).  Believing the October 7, 2015 letter to constitute a breach of the September 11, 2015 Settlement Agreement, Defendant filed a lawsuit in France against IMS France.  (Id. ¶ 32; Def's. Opp. Br. at 5, n.3).

bound by the Agreement, that the Agreement would not bar this action as its claims of misappropriation are "not related to or dependent on" that Agreement. (Pl's. Mov. Br. at 16 n.4).

After reviewing the parties' briefs and hearing the parties' arguments as to the effect of the Settlement Agreement on the instant action, the Court Ordered Defendant to file a brief "specifically addressing his position that IMS USA, a non-signatory to the Settlement Agreement, is nevertheless bound by its terms" as well as "the effect, if any, that Article 9 (the Forum Selection Clause) of the Settlement Agreement has on the pending action." (ECF No. 25). The Court also permitted Plaintiff the opportunity to respond. (Id.). Per this Court's Order, Mr. Lempernesse filed his supplemental brief on December 23, 2015. (ECF No. 26, "Def's. Dec. 23, 2015 Br."). Plaintiff responded on December 30, 2015. (ECF No. 27, "Pl's. Dec. 30, 2015 Br.").

Defendant now argues, *inter alia*, that IMS USA, albeit a non-signatory to the Settlement Agreement, is nevertheless bound to the Agreement's waiver and forum selection clauses as a third-party beneficiary of that Agreement. (Def's. Dec. 23, 2015 Br. at 10-11).[2]

## ii.    Legal Standard: The Third Party Beneficiary Doctrine

"Ordinarily, a party not a signatory to a contract cannot be bound by the terms of that contract. As a general matter, the Third Circuit is reluctant to enforce a contractual clause against a non-party, unless 'accepted principles of agency or contract' make it appropriate." *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 10-cv-5321 (WHW), 2014 WL 1908500, *3

---

[2] Mr. Lempernesse also argues that IMS USA is bound to the Agreement by the contractual principle of assumption and equitable estoppel. (Id. at 10-16). Lastly, Defendant contends that IMS USA is bound to Article 9's forum selection clause under the "closely related" party doctrine. (Id. at 16-20). Plaintiff contests the applicability of these doctrines to bind IMS USA to the Agreement. (Pl's. Dec. 30, 2015 Br.). Because the Court agrees with Defendant that IMS USA is bound to the Settlement Agreement as a third-party beneficiary, the Court need not address the alternative theories offered by Defendant.

(D.N.J. May 13, 2014) (quoting *E.I. DuPont de Nemours & Co v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194, 202 (3d Cir. 2001)); *see also Bedwell Co. v. Camden County Improvement Auth.*, No. 14-cv-1531 (JEI), 2014 WL 3499581, *3 (D.N.J. July 14, 2014) ("Except for limited circumstances not present here, a contract cannot define the legal obligations between two entities unless those two entities are parties to the contract."). That said, courts have held a non-signatory bound to a contract where that signatory can be said to be a "third party beneficiary" of the contract. *See, e.g., First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. & Loan Ass'n of Norristown*, 610 F.2d 164, 170 (3d Cir. 1979).

For a third party to be bound to a contract as a third party beneficiary, it must be shown that the contract was "'made for the benefit of said third party within the intent and contemplation of the contracting parties.'" *First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. & Loan Ass'n of Norristown*, 610 F.2d 164, 170 (3d Cir. 1979) (quoting *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J. Super. 370, 373 (Law Div. 1972)). Stated differently, "[u]nder New Jersey law, 'the intention of the parties to recognize a right of performance in the third party is the critical factor that governs the characterization of the beneficiary." *Coastal Group, Inc. v. Westholme Partners*, Civ. No. 94-3010, 1998 WL 34233133, *13 (D.N.J. 1998) (Hayden, J); *see also Borough of Brooklawn v. Brooklawn Housing Corp.*, 11 A.2d 83, 85 (N.J. 1940). Interpreting New Jersey contract law, the Seventh Circuit has recognized that in order to prove one's status as a third-party beneficiary, an individual must show that "the benefit to [the party] must have been, to some extent, a motivating factor in the parties' decision to enter the contract." *Corrugated Paper Products v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir.1989); *see also Coastal Group, Inc.*, 1998 WL 34233133, *14.

### iii.   IMS USA is a Third-Party Beneficiary of the September 11, 2015 Settlement Agreement

Defendant argues that IMS USA is a third party beneficiary of the Settlement Agreement because it received numerous benefits under the Agreement. (Def's. Dec. 23, 2015 Br. at 12). Specifically, he notes that under the Agreement, he expressly "confirm[ed] that he is fully satisfied in his right resulting from the termination of his expatriation contract with CSD USA (the predecessor to IMS USA) and that no amount is owed to him in this respect." (Def's. Dec. 23, 2015 Br. at 12; Agreement, Article 1.2). Mr. Lempernesse also agreed "not to use for himself or to the benefit of any third party or entity, any confidential information . . . as well as any other confidential information concerning the Company, CSD USA or any other company of the IMS group that operates within the business acquired from the Cegedim group" (Id. at 13; Agreement, Article 5) and he promised to "reimburse the Company or CSD USA, for any taxes that they may have to pay on his behalf" (Id.; Agreement, Article 7). Lastly, in Article 3 of the Settlement Agreement, Mr. Lempernesse agreed that "all accounts between him and the Company, CSD USA and all other companies of the group are settled, without any exceptions or reservations whatsoever," and also expressly released IMS USA from "any claim, request, action or proceeding relating, in particular, to the events detailed in the preamble to this agreement, but more generally for any reason whatsoever" (id.).

Plaintiff responds that the evidence does not show that the contract was made for the benefit of IMS USA. (Pl's. Dec. 30, 2015 Br. at 10). Instead, Plaintiff states that "[i]t is undisputed that the purpose of the Agreement was to resolve a dispute between IMS [ ] France and Lempernesse regarding the Change of Control Agreement . . . [which] does not even mention IMS [USA] or its predecessor." (Id.). The purpose of the Agreement was so that "IMS [ ] France could avoid paying the full liability under the Change of Control Agreement and Lempernesse would avoid the risk

and burden of litigation." (Id. at 11). IMS USA also notes that none of its attorneys were involved in the making of the contract. (Id.).

The Court agrees with Mr. Lempernesse that IMS USA is a third-party beneficiary of the Settlement Agreement. As discussed above, for a non-signatory to be bound to a contract as a beneficiary, it must be shown that the contract was "'made for the benefit of said third party within the intent and contemplation of the contracting parties.'" *First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. & Loan Ass'n of Norristown*, 610 F.2d 164, 170 (3d Cir. 1979) (quoting *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J. Super. 370, 373 (Law Div. 1972)). Courts consider whether a party is named in the contract as evidence of the signatories' intentions that a third party benefit from that contract. *See, e.g., E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (finding the parent corporation was not an intended third party beneficiary of a contract where the contract itself identified three beneficiaries—of which the parent corporation was not one); *see, also, I.H.O.P No. 46-3 v. International House of Pancakes, Inc.*, Civ. No. 11-1044, 2011 WL 938787, *3 (D.N.J. Mar. 16, 2011) (Martini, J) ("The mere fact that Plaintiffs are not specifically named in the lease is not a bar to a court finding that they are intended third-party beneficiaries—whether a party is named in a contract is only one form of evidence of the parties' intentions."); *Beth Schiffer*, 2014 WL 1908500, *4 (finding that defendant failed to show that plaintiff was a third party beneficiary of a warranty where, among other things, the warranty "d[id] not name or reference [p]laintiff").

Here, the Settlement Agreement expressly names CSD USA (the predecessor to IMS USA) numerous times. Moreover, it is evident from the four corners of the Agreement that Mr. Lempernesse and IMS France intended that IMS USA would reap significant benefits from the

12

parties' contract.  The following provisions of the Settlement Agreement are telling of the parties' concern that the Settlement Agreement benefit IMS USA:

- **Article 1.2.  Relocation.** . . . "The Employee confirms that he is fully satisfied in his right resulting from the termination of his expatriation contract with CSD USA and that no amount is owed to him in this respect."

- **Article 3. Concessions made by the Employee.** . . . "The Employee hereby declares that all accounts between him and the Company, CSD USA and all other companies of the group are settled, without any exceptions or reservations whatsoever. . . . As a result, the Employee . . . waives any claim . . . connected with the conclusion, execution, modification or termination of his employment contract with the Company, against the Company, CSD USA or any other company of the IMS group."

- **Article 5. Confidentiality and non-disparagement.** . . . "The Employee undertakes not to use for himself or to the benefit of any third party or entity, any confidential information (that is to say not generally known by the public) . . . concerning the Company, CSD USA or any other company of the IMS group . . . ."

- **Article 7. Tax Regime.** . . . "The Employee undertakes, as the case may be, to reimburse the Company or CSD USA, for any taxes that they may have to pay on his behalf for the amounts paid to him under this agreement."

In short, the Settlement Agreement clearly demonstrates the parties' "contractual intent to recognize a right to performance in" IMS USA.  *Broadway Maintenance Corp. v. Rutgers, State University*, 90 N.J. 253, 259 (1982).  Moreover, the Restatement (Second) of Contracts § 302, which has been cited approvingly by the New Jersey Supreme Court, *see Broadway Maintenance*, 90 N.J. at 259, provides that a non-signatory is an intended beneficiary where, *inter alia*, "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promise performed."  It is clear that by executing the Settlement Agreement, Defendant agreed to give IMS

13

USA the benefit of its promises, as listed above.[3]  For these reasons, the Court finds that IMS USA is a third-party beneficiary of the Settlement Agreement.

### iv.   As a Third-Party Beneficiary, Plaintiff is Bound by Article 9's Forum Selection Clause

Article 9 of the Settlement Agreement provides: "Any dispute arising out of difficulties in the interpretation or performance of this Agreement *shall be governed by French law and submitted to the French courts of competent jurisdiction*." (ECF No. 26-2, Declaration of Christopher Gould) (emphasis added).[4]  As the Court has found that Plaintiff is a third-party beneficiary to the instant action, the Court necessarily finds that Plaintiff is bound to Article 9's Forum Selection Clause, requiring that the instant dispute be governed by French law, in the French courts.  (Id.).

Moreover, the Court finds that the Forum Selection Clause in the Settlement Agreement is enforceable in this Court.  "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27–32 (1988).  Under federal law, in order for a forum selection clause to be enforceable, "the choice of forum must be mandatory rather than permissive.  To assess whether a forum selection clause is mandatory, the court looks to the wording of the agreement and applies ordinary principles of

---

[3] The question of whether Defendant did, in fact, maintain the sanctity of the Company's proprietary information and uphold his promise to not misappropriate that information, is a question that the Court need not opine on in light of its finding that Defendant's "Settlement Agreement" defense has merit.

[4] Defendant has provided a Declaration of Christopher Gould, an American lawyer and translator of French legal documents, who attests to this English translation of Article 9, which differs from IMS USA's English translation.  IMS USA does not dispute the accuracy of Defendant's translation; instead, it merely argues that the Court should disregard Plaintiff's translation because Mr. Lempernesse should not be allowed to "cherry-pick only certain portions of IMS [USA]'s English translation to support his affirmative defense." (Pl's. Dec. 30, 2015 Br. at 7, n.2).  Given that Plaintiff does not refute the accuracy of Defendant's translation, the Court will accept the translation certified to by Christopher Gould.

contract interpretation." *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 687 (D.N.J.1998) (internal citations and punctuation omitted).   In short, the Court must determine whether the plain language of the contract "unambiguously states the parties' intentions" to make jurisdiction exclusive. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir.1997) (citation omitted).   The forum selection clause, however, does not have to contain language such as "exclusive" or "sole" to be mandatory. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. App'x 82, 84–86 (3d Cir.2006) (upholding a forum selection clause, which stated "[t]his Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania," and finding it unambiguous "[d]espite the provision's failure to use words like 'exclusive' or 'sole' with respect to venue").   Overall, the "clause must be reasonably capable of only one construction." *Wyeth*, 119 F.3d at 1074 (citation omitted).

A forum selection clause is presumptively valid and enforceable by the forum unless the objecting party establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong policy of the forum, or (3) that enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *See See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.1983); *see also Days Inns Worldwide, Inc. v. Royal Hospitality Grp., LLC*, No. 12–5028, 2013 WL 538343, at *3 (D.N.J. Feb.13, 2013) (citing standard).

Here, the Forum Selection Clause unambiguously indicates the parties' intention to litigate "[a]ny dispute arising out of difficulties in the interpretation or performance of this Agreement," in French courts, and Plaintiff has not disputed the validity of the Clause; rather, Plaintiff disputes the applicability of the clause to its claims of misappropriation.   The Court is cognizant of Plaintiff's argument that its claims are "independent and distinct from the Agreement" and

15

therefore "should not be subject to the forum selection or choice of law provisions in that document." (Pl's. Dec. 30, 2015 Br. at 17). However, whether Plaintiff's claims of misappropriation and threated misappropriation of trade secrets are in fact independent of the Settlement Agreement is an issue relating to the "interpretation" of the Agreement, and therefore subject to the Forum Selection Clause.

v. **Plaintiff has Failed to Show a Likelihood of Success on the Merits**

In light of the above finding that Plaintiff is bound by the Settlement Agreement's Forum Selection Clause as a third-party beneficiary, the Court finds that, regardless of the strength of IMS USA's *prima facia* case for violation of the New Jersey Trade Secrets Act, Plaintiff cannot show a likelihood of success on the merits, as this case is destined to be handed by the French judicial system.

## CONCLUSION

For the reasons stated herein, the Court DENIES Plaintiff's motion for a preliminary injunction. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: January /9ᵗʰ, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE